UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY S. WILLSON,

                         Petitioner,

    -vs-

JAMES G. BERBARY, Superintendent,

                     Respondent.

_____

**DECISION AND ORDER**

No. 03-CV-6188

## INTRODUCTION

Petitioner, Gregory Willson ("Willson"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Cattaraugus County Court on charges of second degree assault and third degree criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from an altercation that occurred on the night of December 27, 1997, at the City Limits Bar in the Town of Olean, and which involved Willson and Donald Lippert ("Lippert"). Willson overheard Lippert make a remark to someone else regarding a motorcycle group called "the Kingsmen." The remark apparently angered Willson and he instigated two fights with Lippert. As a result of this incident, Willson was indicted on three counts of second degree assault and two counts of third degree criminal possession of a weapon. Willson was arraigned on these charges on June 1, 1998, and entered a plea of not guilty.

Willson's jury trial was conducted in Cattaraugus County Court (Himelein, J.) on

February 1 through February 3, 1999. Nancy Burdick ("Nancy") testified that she was working as a fill-in bartender at the City Limits Bar on the night of the incident. T.126.[1] At about 8:30 p.m. that night, there were about six other people in the bar. T.129. Willson was sitting on the front side of the bar, and Lippert was sitting near the back door. Nancy testified that she saw Willson approach Lippert, grab him, and then begin to fight with him. T.131-32. After the fight was broken up, Willson walked through the bar to the front door; as he did so, Nancy saw him put a straight-bladed six-inch knife into a sheath on his belt. T.134. Nancy did not overhear anyone complain about being injured. T.139. She then went into the kitchen to telephone the owner of the bar and advise him of what had occurred. T.135. As she was doing so, Susan George, who had followed the petitioner out of the bar, approached her and handed her a gun. T.139. Nancy took the gun and locked it in the kitchen. T.136.

At that point, Nancy's husband, Blair Burdick ("Burdick") pulled into the parking lot and observed a light blue Ford pickup truck in the lot. T.153. His headlights illuminated the truck and he saw a man jump from the bed of the pickup and tackle Willson, who was standing at the driver's-side door. T.154-55. As Willson got tackled, a gun flew out and landed in the parking lot. T.155. Burdick saw a red-haired woman pick up the gun and carry it inside the bar. T.157. Burdick then observed petitioner and another man, later identified as Lippert, fighting on the ground. Willson had Lippert pinned down and struck him "hard and fast" eighteen to twenty-four times. T.156. According to Burdick, Lippert was trying to block the blows, but he never struck petitioner. T.156, 157. After the fight was over, Burdick observed that Lippert had blood on his chin and cheek, but Willson appeared to be uninjured. T.158.

---

[1] Citations to "T.__" refer to the trial transcript.

Burdick then entered the bar where he encountered his wife and called 911 and the owner of the bar. T.137. Willson re-entered the front door of the bar and demanded that Nancy return his gun to him. T.137, 159. When he heard that the gun was locked up and inaccessible, Willson became very angry and announced that if he did not get his gun back, he would get another gun from his truck and shoot everyone in the bar. T.138, 159. Nancy, Burdick, and the rest of the patrons then exited the bar through the rear door, and Willson left through the front. T.138, 160.

Lippert, the victim, testified that during a conversation with someone at the City Limits Bar on the night of December 27, he commented that the "Kingsmen [a motorcycle club] weren't like they were 20 years ago." T.173. Burdick then confronted Lippert and stated, "[A]re you calling me a pussy?" T.173. When Lippert did not respond, Willson lunged at him and they fought. T.174. However, Lippert did not observe a knife in Willson's possession during that fight inside the bar. T.175. When the fight ended, Lippert testified, Wilson jumped up and headed for the door, stating that he was going to get a shotgun and "blow [Lippert's] ass away." T.176. Lippert followed Willson outside and observed him standing at the truck with the door open, holding a shotgun. T.177. Lippert went through the pickup box into the truck and jumped on Willson in an attempt to wrest the gun away from him. T.177. The gun went flying and Lippert and Willson ended up on the ground. Lippert testified that Willson was on top of him, hitting him in the face. T.178. When the assault ended, Lippert went to the hospital where he was diagnosed with a broken nose which required surgery and kept him out of work for at least a month. T.179-80.

Deputy Bryan Schwabenbauer ("Schwabenbauer") testified that when he responded to a call concerning a man with a gun at the City Limits Bar, he arrived to find Willson in the parking

lot by his pickup truck. T.203-04. Schwabenbauer approached Willson and apprehended him, removing a dagger in a sheath from Willson's right hip and a flip-knife from his front pants pocket. T.207, 209. In addition, a Mossberg Maverick .12-gauge shotgun and a Ruger Mini-30 were found in Willson's truck.

Deputy Thomas Drake ("Drake") testified concerning his experience in the use and identification of knives. T.222. Drake testified that the knife taken from Willson at the time of his arrest was a dagger and was a survival weapon designed for killing or injuring someone. T.223-34.

The defense called Susan George ("George"), who testified that on December 27, 1997, she was in the company of Lippert and Bob and Cheri Austin at the City Limits Bar. T.232. George recounted the remark by Lippert concerning the Kingsmen and stated that a fight ensued after Willson approached Lippert. George testified that she did not observe a knife in anyone's possession during the fight inside the bar, although she did observe Willson check his knife as he left the bar. T.235. She denied hearing Willson issue any threats as he left. *Id.* George testified that Lippert followed Willson out of the bar and jumped over the bed of the pickup truck and onto Willson. T.237. George testified that Willson kept hitting Lippert until she punched Willson in the arm three times, at which time Willson stopped. George then brought the gun, which had landed on the ground, into the bar.

At the conclusion of the prosecution's case, the trial court had dismissed three counts of the indictment *sua sponte*, leaving only the counts charging Willson with the unarmed assault on Lippert and with criminal possession of the dagger. T.228-29. The jury convicted Willson of the remaining counts of the indictment. Willson was sentenced as second felony offender to a

determinate term of four and one-half years on the second degree assault conviction, to run consecutively to his sentence of three and one-half to seven years on the weapons possession conviction.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed petitioner's conviction on May 10, 2000. *People v. Willson*, 272 A.D.2d 959 (App. Div. 4th Dept. 2000). The New York Court of Appeals denied leave to appeal. *People v. Willson*, 95 N.Y.2d 873 (N.Y. 2000). Willson collaterally attacked his conviction by means of a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. The trial court denied the motion on May 29, 2001, and leave to appeal was denied by the Appellate Division on February 7, 2002. Willson then filed a C.P.L. § 440.10 motion in the Appellate Division, alleging that his appellate counsel was ineffective. This motion was denied on October 1, 2002.

This habeas petition followed. Respondent does not raise the defense of non-exhaustion, and all of the claims raised appear to be fully exhausted and properly before this Court. For the reasons set forth below the petition is denied.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2);

*Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**Merits of the Petition**

      Wilson contends in his petition that he was deprived the effective assistance of trial counsel; that  consecutive sentences were illegally imposed; that a determinate sentence of four and one-half years was illegally imposed; that the evidence against him was insufficient; that expert witness testimony was erroneously admitted; and that the prosecutor committed misconduct. Because there is some overlap between Willson's contentions concerning the grounds for finding that his trial counsel was ineffective and the substantive objections he has raised apart from his ineffective assistance claim, I will address them separately in my analysis of each issue.

**1.      Illegality of consecutive sentences**

      According to Willson, because his assault and weapons possession convictions were part of the same criminal transaction, the trial court erred in imposing consecutive sentences for them. On direct appeal, the court held that the trial court "did not err in imposing consecutive terms of imprisonment; the two offenses were not 'committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other[.]'" *People v. Willson*, 272 A.D.2d at 960 (quoting N.Y. Penal Law § 70.25(2)).

      New York Penal Law § 70.25(2) provides in relevant part that

> When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and was also a material element of the other, the sentences . . . must run concurrently.

N.Y. Penal Law § 70.25(2). In the present case, the weapons possession charge stems from

Willson's possession of a dagger during the initial fight with the victim while inside the bar. After that fight ended, Willson left the bar to go retrieve a gun from his pickup truck. The assault most definitely occurred while Willson was outside in the parking lot, getting his shotgun. Thus, the two criminal acts–the criminal possession of a weapon and the assault–do not comprise a "single act or omission." Rather, they were two separate offenses committed at different places and different times and with different instrumentalities. As respondent points out, the dagger was not involved in the assault in the parking lot, so Willson's possession of it was not an act which "constituted one of the offenses which was also a material element of" the assault. N.Y. Penal Law § 70.25(2). Consequently, the trial court was not bound by § 70.25(2) and was within its discretion in imposing consecutive sentences for these two convictions. Because the terms of the consecutive sentences imposed are within the statutory range prescribed by New York's Penal Law, no federal constitutional issue is presented. *White v. Keane*, 969 F.2d 1377, 1381 (2d Cir. 1992).

**2.      Illegality of determinate sentence of four and one-half years**

Willson alleges that the determinate sentence of four and one-half imposed with respect to his second degree assault conviction (a class D violent felony offense) is illegal because "by operation of state law only whole numbers are to be used for petitioners' particular crime." Petition (Docket #1). As respondent notes, Willson makes no specific reference to the provision of state law which supports this contention. Furthermore, a review of the applicable sections of the Penal Law shows that Willson is incorrect. Section 70.06 of the Penal Law provides that when the trial court has found that a person is a second felony offender and the sentence to imposed on such person is for a Class D violent felony offense, the court must impose a

determinate sentence of imprisonment the term of which must be at least three years and must

not exceed seven years. Willson was adjudged to be a second felony offender, and the crime for

which he was sentenced is a violent felony offense. N.Y. Penal Law § 70.02(1)(c). His sentence

of four and one-half years is obviously within the three-to-seven-year range. There is no

provision in the Penal Law, of which this Court is aware, or that Willson has cited, which

requires that sentences imposed pursuant to § 70.02 be in "whole numbers." Consequently, this

claim provides no basis for habeas relief. *See White v. Keane*, 969 F.2d at 1381.

**3.    Insufficiency of the evidence**

Willson contends that there was insufficient evidence to support his convictions for

assault and criminal possession of a weapon (the dagger). This claim must be dismissed.

The Due Process Clause of the Fourteenth Amendment prohibits conviction "'except

upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

[the defendant] is charged.'" *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836,

839 (2d Cir. 1997) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)) (alteration in original).

Thus, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record

evidence adduced at the trial *no* rational trier of fact could have found proof of guilt beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 560 (1979) (footnote omitted)

(emphasis in original); *accord*, *e.g.*, *Einaugler*, 109 F.3d at 839. This requires inquiry into

"whether, as a matter of federal law, there was sufficient evidence for a jury to find that the

prosecution proved the substantive elements of the crime as defined by state law." *Einaugler*,

109 F.3d at 839 (citing *Jackson*, 443 U.S. at 324 & n. 16; *Green v. Abrams*, 984 F.2d 41, 44-45

(2d Cir. 1993)). In assessing whether the evidence was legally sufficient, a habeas court must

"'view[ ] the evidence in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319) (alteration in original). Furthermore, the court must defer to the jury's assessment of the weight of the evidence and the credibility of the witnesses and may not substitute its view of the evidence for the jury's. *Herrera v. Collins*, 506 U.S. 390, 401 (1993); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Under this "rigorous" standard, the habeas court "faced with a record of historical facts that supports conflicting inferences must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326; *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

Evaluating Willson's claim in light of these legal principles, the Court concludes that there was sufficient evidence presented at trial to sustain both of the convictions. With regard to the assault charge, Burdick's testimony that Willson struck the victim eighteen to twenty-four times in the face was not controverted. This number of blows to the victim's face clearly demonstrates Willson's intent to cause serious physical injury. The medical evidence established that as a result of the assault, the victim sustained a comminuted fracture of his nose; his nose actually was dislodged, and surgery was required to remedy it. It certainly was not irrational for the jury to conclude that this constituted "serious physical injury" for purposes of N.Y. Penal Law §§ 10.00(1) and 120.05(1).

Willson's contention that the prosecution did not disprove the affirmative defense of justification beyond a reasonable doubt is without merit. The proof at trial was that after the initial fight inside the bar, Willson threatened to get a gun so that he could "blow [the victim's] ass away." The proof also established that after uttering this declaration, Willson left the bar,

went to his pickup truck, and was in the process of loading his shotgun when the victim–who was

unarmed–leaped onto Wilson in an attempt to prevent him from carrying out his threat. Given

this evidence, it clearly was reasonable for the jury to conclude that the victim jumped onto

Willson in order to prevent Willson from shooting him.

Finally, there was proof adduced at trial that Willson possessed a dagger, which was seen

to be out of its sheath as Willson was walking away after the initial fight inside the bar. Viewing

the evidence concerning Willson's possession of the dagger in the light most favorable to the

prosecution, the jury did not act irrationally in convicting Willson of criminal possession of

weapon with the intention of using it unlawfully.

**4.     Erroneous admission of evidence**

Willson argues that the trial court erred in allowing Deputy Drake to testify that, in his

expert opinion, one of the knives confiscated from Willson upon his arrest, within the meaning of

New York Penal Law § 265.01(2). On direct appeal, the appellate court found that the trial court

did not err in admitting this testimony since the subject matter of the testimony was not within

the common knowledge and experience of the jurors. *People v. Willson*, 272 A.D.2d at 960

(citation omitted).

Generally speaking, a state court's evidentiary ruling does not present a cognizable

federal constitutional issue–even if the ruling is erroneous. *See Crane v. Kentucky*, 476 U.S. 683,

689 (1986) ("We . . . acknowledge our traditional reluctance to impose constitutional constraints

on ordinary evidentiary rulings by state trial courts."); *Estelle v. McGuire*, 502 U.S. 62, 72

(1991). The Second Circuit has explained that, "[i]n order to prevail on a claim that an

evidentiary error deprived [a] defendant of due process . . . he must show that the error was so

pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).  As the Second Circuit has noted, that concept is "'elusive.'" *Id.* (quoting *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.), *cert. denied*, 464 U.S. 1000 (1983)). When a defendant alleges that evidence has been erroneously admitted, the standard is whether such proof, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, highly significant[.]'" *Id.* (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982) (internal quotation marks omitted)).

It is not clear to this Court that there was, in fact, error under state law--there is no requirement under New York state law that a trial court formally "certify" a witness as an expert. *People v. Gordon*, 202 A.D.2d 166, 167, 608 N.Y.S.2d 192, *lv. denied* 83 N.Y.2d 911, 614 N.Y.S.2d 393, 637 N.E.2d 284); *People v. Highsmith*, 254 A.D.2d 768, 679 N.Y.S.2d 758  (App. Div. 4th  Dept. 1998). Furthermore, the admissibility of expert testimony is a matter that resides in the province of the trial courts in New York. As the New York Court of Appeals has explained, that the "admissibility and bounds of expert testimony are addressed primarily to the sound discretion of the trial court, and review beyond the intermediate appellate level is generally unwarranted. It is for the trial court in the first instance to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefited [*sic*] by the specialized knowledge of an expert witness." *People v. v. Cronin*, 60 N.Y.2d 430, 433, 470 N.Y.S.2d 110 (N.Y. 1983). Even if the court's ruling were erroneous, this Court cannot say that the testimony was so "sufficiently

material to provide the basis for conviction," *Collins v. Scully*, 755 F.2d at 18, which otherwise

would not have existed. Thus, habeas relief is not warranted on this claim.

**5.      Prosecutorial misconduct**

The habeas court's scope of review as to claims of prosecutorial misconduct is quite

limited. In order to overturn a conviction, the Court would have to find that the prosecutor's

comments constituted more than mere trial error and instead were so egregious as to violate the

petitioner's due process rights. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974);

*Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) ("The appropriate standard of review for a

claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process,

and not the broad exercise of supervisory power.") (internal quotation marks and citations

omitted); *accord Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998).

Thus, to be entitled to relief, Willson must show that he "'suffered actual prejudice

because the prosecutor's comments during summation had a substantial and injurious effect or

influence in determining the jury's verdict.'" *Tankleff*, 135 F.3d at 252 (quoting *Bentley v. Scully*,

41 F.3d 818, 823 (2d Cir. 1994) (internal quotation marks and citation omitted in original)).

"Rarely are comments in a prosecutor's summation 'so prejudicial that a new trial is required.'"

*United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998) (quoting *United States v. Forlorma*,

94 F.3d 91, 93 (2d Cir. 1996) (quotations omitted)), *cert. denied*, 525 U.S. 1083 (1999). Reversal

of a defendant's conviction is warranted only where "'the statements, viewed against the entire

argument before the jury, deprived the defendant of a fair trial.'" *Id.* (quoting *Forlorma*, 94 F.3d

at 94). In determining whether a defendant has suffered actual prejudice as a result of the

prosecutorial misconduct, the reviewing court considers "'the severity of the misconduct; the

measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Floyd*, 907 F.2d at 355 (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981) (*per curiam*)); *accord, e.g.*, *Germosen*, 139 F.3d at 128; *United States v. Miller*, 116 F.3d 641, 683 (2d Cir. 1997). Moreover, where the defendant did not object to the remarks at trial, reversal is warranted only where the remarks "were so substantially prejudicial as to constitute 'flagrant abuse.'" *United States States v. Russo*, 302 F.3d 37, 47 (2d Cir. 2002) (quoting *Germosen*, 139 F.3d at 128). The Court first will review all of the challenged remarks and then discuss whether their cumulative effect was sufficient to deny Willson his right to a fundamentally fair trial.

Willson contends that the following comment by the prosecutor improperly attempted to shift the burden of proof by suggesting that petitioner had the duty to prove a defense:

> There is no reference in the medical records to alcohol. You would think if there was evidence of it, they would have made reference to it. . . . Now if there was a concern about whether or not [the victim's] injuries were caused by being beaten by the defendant they would have put proof in on that. . . .

T.271, 272. On direct appeal, the Appellate Division found that this remark tended to shift the burden of proof to petitioner, but that it was not so egregious as to deny him a fair trial. The Court agrees that the remark was improper and the prosecutor should have refrained from making it.

Willson also claims that it was improper for the prosecutor to state that "defendant terrorized a barroom full of innocent people. He caused them to run for their lives." T.269. Willson claims that this is "an opinion which is not even reasonably based on fact or the testimony given at trial" since no witnesses, including the victim, "testified that they were 'terrorized' or 'ran for their lives.'" Petitioner's Traverse at 19. This is disingenuous on

-13-

Willson's part–Lippert might not have stated that he was "terrorized," but he did testify that in response to Willson threatening to "blow his ass away," he ran out of the bar to try to prevent Willson from getting his shotgun and carrying out his threat. Furthermore, the Burdicks left the bar hurriedly as the situation escalated. The Appellate Division did not unreasonably apply Supreme Court precedent in concluding that this was fair comment on the evidence at trial. Similarly, the prosecutor's comment that Willson "beat some guy to a pulp," T.277, and that the victim received a "hell of a beating," *id.*, were, as the state court found, fair comment on the evidence given Burdick's eyewitness testimony that Willson struck the victim with eighteen to twenty-four "hard and fast" blows to the face.

Finally, Willson complains that prosecutor made repeated reference to guns and ammunition possessed by him and stated, "Before he [Willson] came back and shot him . . ." T.277. Willson is taking that remark out of context; the prosecutor's full comment was, "Lippert rightly or wrongly was defending himself by trying to get the gun away from the defendant. Before he came back in and shot him." T.277. The prosecutor did not misstate the facts; he merely was summarizing Lippert's testimony. Furthermore, the comment about petitioner's possession of ammunition was based on the testimony at trial by the police concerning the weapons and ammunition found on Willson and in his truck. Again, this was fair comment on the evidence at trial.

Considering Willson's allegations in light of the three-part test set forth in *Modica*, the Court does not agree that the misconduct was severe. In fact, there was only objectionable comment, which was regarding the burden of proof. Regrettably, trial counsel did not object, and the trial court did not *sua sponte* issue a curative instruction. Although the court instructed the

jury as to the prosecution's burden of proof during his general charge, it would have been better practice for it to have interjected regarding the burden of proof at the time the improper comment was made. However, a conviction "is not to be lightly overturned on the basis of a prosecutor's comments standing alone" in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1, 11 (1985). Finally, given the extremely compelling evidence against Willson, the Court cannot find that this comment actually prejudiced Willson since there is no reasonable likelihood that the outcome of the trial would have been different, even without the challenged remark.

**6.     Ineffective assistance of trial counsel**

Willson contends that trial counsel's performance was deficient, citing the following aspects of his representation: (1) failure to object to various statements made by the prosecutor during summation; (2) failure to object to Deputy Drake's testimony concerning the dagger; (3) waiver petitioner's speedy trial rights; (4) failure to submit pre-trial motions; and (5) failure to object to imposition of consecutive sentences and a determinate four and one-half year sentence.

**a.     Legal standard**

A defendant claiming that he was deprived his Sixth Amendment right to the effective assistance of counsel at his trial must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and then "affirmatively prove prejudice" arising from counsel's allegedly deficient representation, *id.* at 693. Proving prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.  Accord United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (noting that a

defendant "bears a heavy burden" under *Strickland*'s two-pronged test). In applying the

*Strickland* standard, a reviewing court must make "every effort . . . to eliminate the distorting

effects of hindsight" and must "indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance . . . [and] might be considered sound trial

strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *accord Cohen*, 427

F.3d at 167. The overriding concern in such a review is "whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result.'" *Cohen*, 427 F.3d at 167 (quoting *Gaskin*, 364 F.3d at 468) (in

turn quoting *Strickland*, 466 U.S. at 686)).

      **b.**      **Alleged grounds**

            **i.**      **Failure to object to prosecutorial misconduct**

Willson faults counsel for failing to object to all but one of the comments made by the

prosecutor on summation that Willson alleges were objectionable. It is, of course, better practice

for defense counsel to object to improper comments on summation, both to preserve the claims

for review and to provide the trial court an opportunity to issue curative instructions if the

objection is sustained. There may be times, however, when, for strategic reasons, counsel does

not object to comments by the prosecutor so as not to draw the jury's attention to them. Under

the circumstances presented here, the Court cannot find that counsel's failure to object supports

Willson's claim that he was deprived his Sixth Amendment right to counsel. Because the state

court reviewed Willson's prosecutorial misconduct claim on the merits, despite their being

unpreserved for review, he was not prejudiced by trial counsel's failure to object to the comments

at the time. Furthermore, as discussed above, both the state court and this Court found that the

comments were not so prejudicial as to have denied Willson a fair trial.

### ii. Failure to object to expert testimony

Willson argues that trial counsel erred in failing to object to the expert testimony offered by Deputy Drake, who identified the knife confiscated from Willson as a dagger. Willson contends that Drake's testimony was not beyond the common knowledge and experience of the jury and served to bolster the prosecution's case regarding the criminal possession of a weapon. Again, the Appellate Division ruled on the substance of Willson's evidentiary claim and found that the trial court did not err in admitting Deputy Drake's testimony since the subject matter was not within the common knowledge and experience of the jury. Thus, Willson was not prejudiced by trial counsel's failure to object to the introduction of the challenged testimony. Moreover, even if the testimony should not have been admitted, any error in its admission was harmless beyond a reasonable doubt due to the strength of the evidence against Willson.

### iii. Waiver of speedy trial rights

Willson claims that trial counsel improperly waived his Sixth Amendment right to a speedy trial. The record reflects that trial counsel did so for the purpose of pursuing plea negotiations prior to the case being presented to the grand jury, and it therefore appears that counsel's actions had a reasonable strategic basis. Indeed, consents to extend the time for an indictment to be filed "are in fact commonplace where defense counsel is attempting to negotiate a plea." *Rosa v. United States*, 170 F. Supp.2d 388, 401 (S.D.N.Y. 2001). Since they "represent a trial tactic that 'might be considered sound trial strategy,'" they cannot constitute ineffective assistance of counsel. *Id.* (quoting *Mason v. Scully*, 16 F.3d 38, 42 (2d Cir. 1994) and citing *United States v. Asubonteng*, 895 F.2d 424, 429 (7th Cir.) (waiver of speedy trial time through

counsel's agreement to firm trial date did not constitute ineffective assistance of counsel), *cert. denied*, 494 U.S. 1089 (1990)).

### iv.    Failure to file pre-trial motions

Willson asserts that trial counsel failed to file "pre-trial motions." Since Willson does not specify which motions trial counsel should have filed, and what the legal and factual bases of these motions should have been, this argument is too vague to state a claim for federal habeas relief. Without a showing that these supposed motions had merit, this Court is in no position to evaluate whether counsel was deficient in failing to make them, let alone whether petitioner was prejudiced by the failure to raise them. In any event, the Court notes that trial counsel sought some pre-trial relief in the form of a *Sandoval* hearing to determine the admissibility of any of Willson's prior criminal convictions should he choose to testify at trial.

### v.    Failure to object at sentencing

Willson submits that trial counsel was ineffective in failing to object to the court's imposition of consecutive sentences and a four-and-one-half-year determinate sentence. Counsel advocated leniency in sentencing for his client.  However, while counsel could attempt to advocate in behalf of a client for a more lenient sentence, he could not object as a matter of law to these legally imposed sentences. Thus, he cannot be found ineffective on this basis.

### CONCLUSION

For the reasons stated above, Gregory Willson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Willson has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate

of appealability. *See* 28 U.S.C. § 2253.

    **IT IS SO ORDERED**

          /s/ *Victor E. Bianchini*

          _____

            VICTOR E. BIANCHINI
          United States Magistrate Judge

DATED:     March 20, 2006
             Rochester, New York.